[Civ. No. 27732. First Dist., Div. Four. Sept. 30, 1970.]

ORINDA HOMEOWNERS COMMITTEE et al.,
Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY et al.,
Defendants and Respondents;
DOUGHTY, ABBOT, MARCHANT & ESHLEMAN,
Real Party in Interest and Respondent.

**COUNSEL**

Hanna & Brophy and James V. Burchell for Plaintiffs and Appellants.

John B. Clausen, County Counsel, and Michael D. Farr, Deputy County Counsel, for Defendants and Respondents.

Tinning & DeLap and Robert Eshleman for Real Party in Interest and Respondent.

**OPINION**

**DEVINE, P. J.**—Appellants sought unsuccessfully to gain invalidation by the superior court of a rezoning ordinance of Contra Costa County, in the unincorporated Orinda area. Injunction and writ of mandate were denied and judgment was rendered against plaintiffs. Although a question of standing exists as to some of the plaintiffs, we have no doubt that three of the plaintiffs, homeowners, are qualified because Contra Costa County Ordinance No. 1975, section 2205.10, gives standing to appeal from decisions of the county planning commission to anyone whose property rights are adversely affected. It seems to have been taken for granted in the trial court, and understandably so, that the property rights of the homeowners would be adversely affected to a certain extent by the rezoning of the adjacent property, and the question whether rezoning conformed with the general plan was an issue in the case. There is no need, therefore, to make a problem of this matter, and when we refer to plaintiffs, or appellants, herein, we mean the three property owners. We take note, however, of the fact that the litigation is of personal interest to many others in the Orinda area.

Plaintiffs are homeowners upon lands adjacent to a parcel of 187 acres which is owned by real party in interest. The Board of Supervisors of

Contra Costa County, on recommendation of the county planning commission, rezoned the 187-acre parcel from R-20 (single family residential) to P-1 (planned unit development). The plan called for development of "residential clusters" as well as single family residential lots. The maximum density of the clusters would be eight units per acre. Approximately 345 dwelling units would be constructed, of which about 236 would be located in clusters. The actual number of units is subject to change, but "in no case shall the total number of dwelling units exceed 368." The density of the entire property would not exceed two residential units per acre, which is within the density requirements of the master plan previously adopted by the county. The plan provided for approval by the county Director of Planning of the design of all clusters.

## Planned Unit Development

In Hagman, Larson & Martin, California Zoning Practice (Cont.Ed.Bar) p. 236, it is said that a "planned unit development might be described as a tract of land absolved from conventional zoning to permit clustering of residential uses and perhaps compatible commercial and industrial uses, and permitting structures of differing heights."[1] Although planned unit development (which in professional zoning circles has attained the dignity of alphabetical titles—PD or PUD) is often regarded as synonymous with cluster development, "It is more accurate to define cluster development as a device for grouping dwellings to increase dwelling densities on some portions of the development area in order to have other portions free of buildings." (*Id.*, at p. 240.) Since the ordinance in the present case permits as well as regulates residential units only, the term "cluster development" probably fits the situation better than the broader term "planned unit development." But whatever title be given to the concept, the plan is to devise a better use of undeveloped property than that which results from proceeding on a lot-to-lot basis. Control of density in the area to be developed is an essential part of the plan. The reservation of green, or at least open, spaces in a manner differing from the conventional front or back yard is another ingredient. Conformity to good landscaping, as the planners devise it, is also an objective. We do not mean to give a treatise on the subject of planned unit development, however. An excellent description of this species of zoning and a compendium of the literature on the subject is to be found in 114 U.Pa.L.Rev. 3-170.

---

[1] That part of the definition reading "perhaps compatible commercial and industrial uses" has no application to the case at bench because the rezoning is strictly limited to residential uses. Even a proposed administrative office for the area was eliminated from the preliminary development plan.

## Government Code, Section 65852

Appellants contend that the planned unit development or cluster development, as enacted by the ordinance, conflicts with Government Code, section 65852, which provides: "All such regulations shall be uniform for each class or kind of building or use of land throughout each zone, but the regulation in one type of zone may differ from those in other types of zones." It is remarked in Hagman, Larson & Martin, California Zoning Practice (Cont.Ed.Bar) page 237, that no California court has passed on the validity of the planned unit development, although it was presumed to be valid in *Millbrae Assn. for Residential Survival* v. *City of Millbrae*, 262 Cal.App.2d 222 [69 Cal.Rptr. 251], and the authors cite possible nonconformity with Government Code, section 65852.

■ We hold that a residential planned unit development (a cluster development) does not conflict with section 65852 merely by reason of the fact that the units are not uniform, that is, they are not all single family dwellings and perhaps the multi-family units differ among themselves. Section 65852 provides that the *regulations* shall be uniform for each class or kind of building or use of land throughout the zone. It does not state that the units must be alike even as to their character, whether single family or multi-family. In conventional zoning, where apartment houses are permitted in a particular zone, single family dwellings, being regarded (whether rightly or wrongly) as a "higher" use, are also allowed. This causes no conflict with section 65852.

We find nothing to indicate that the Legislature's policy, as expressed in the section, was to prevent county planning agencies and boards of supervisors from applying the concept of planned unit development for the use that is best and most harmonious for the area as the planners and the county legislators conceive it to be. In *Cheney* v. *Village 2 at New Hope, Inc.*, 429 Pa. 626 [241 A.2d 81], a leading case sustaining planned unit development, it was observed that large scale residential developments, particularly in suburban areas, have resulted in more efficient and aesthetic use when there are not inflexible rules applying to individual lots.

In fact, section 65852 seems to have been discussed but once, in *Scrutton* v. *County of Sacramento*, 275 Cal.App.2d 412, 418 [79 Cal.Rptr. 872]. In that case, appellant contended that rezoning of her property from agricultural to multiple family residential use, upon condition that she pave an adjoining street at her own expense, violated the section. But the court rejected this, holding that section 65852 "aims at the general objective of uniform land use within each land zone," and that the conditional zoning which had been enacted did not conflict with the code section. In *Desert*

*Outdoor Advertising, Inc.* v. *County of San Bernardino,* 255 Cal.App.2d 765 [63 Cal.Rptr. 543], an ordinance which prohibited billboards, except in certain areas and under certain conditions, was upheld because it was uniform in application wherever equal conditions existed. It had been contended by appellant in that case that former section 65802, the predecessor to present section 65852, of the Government Code had been violated. No other cases involving these sections or their predecessor, Government Code section 38697, have been found. These sections were derived from section 2 of the Standard State Zoning Enabling Act, and it is said in 1 Anderson, American Law of Zoning, section 5.17, page 288, that the purpose of the section was mainly a political rather than a legal one, namely, to give notice to property owners that there shall be no improper discriminations. This was useful in the early days of zoning. Professor Anderson suggests that the fact that the section is an expression of policy may be the reason for the scarcity of judicial construction of the uniformity requirement.

### Findings and Evidence

Appellants contend that the board of supervisors failed to make three findings which they say are required by section 2204.20 of Contra Costa County Ordinance No. 1975, before rezoning the property: 1) That the proposed change will substantially comply with the general plan; 2) that the uses authorized for the rezoned area will be compatible with the district and adjacent areas; and 3) that community need has been demonstrated.

■ Where findings of fact are required by statute, such findings must be made or the action is without effect. (*Moss* v. *Board of Zoning Adjustment,* 262 Cal.App.2d 1, 8 [68 Cal.Rptr. 320]; *Williams* v. *City of San Bruno,* 217 Cal.App.2d 480 [31 Cal.Rptr. 854].) But section 2204.20 does not mention "findings." It does require that the planning agency shall "determine" that certain conditions exist before ordering rezoning. Sections 2204.30 and 2204.40 of the ordinance, relating to variance permits and conditional land use permits, require that the agency hearing the matter "find" certain conditions to exist, and provide that "failure to so find shall result in a denial." The contrast in language of the various sections of the ordinance suggests that section 2204.20 does not require findings of fact.

■ Nevertheless, the board of supervisors adopted the reasons of the planning commission in granting the application for rezoning, and the board specifically referred to its adoption of the findings and decision of the planning commission as being the *findings* and decision of the board. The findings are: 1) The topography of the parcel is very difficult and the cluster plan development would require less grading than a conventional subdivision, "thereby retaining a considerable amount more of the natural

ground elevations and features." 2) The proposed development has quality design potential that "would offer a living environment that would be an asset to the overall community development." 3) The proposed density falls within the master plan limits and the increased density caused by the clusters would be compensated for by the surrounding open areas. 4) The location and size of the property "sets it apart and gives it unique characteristics not found elsewhere in the Orinda Area." 5) The arrangement of residential clusters "provides for an adequate transition between surrounding patterns of development and the cross roads. This transition offers maximum compatibility with these adjoining patterns of development." These findings comply substantially with the requirements of the ordinance. ■ "The findings of a local commission, composed of laymen, are expected to be informal. They are not required to meet the standards of judicial findings of fact." (*County of Santa Barbara* v. *Purcell, Inc.,* 251 Cal.App.2d 169, 177 [59 Cal.Rptr. 345].)

Appellants also contend that the criteria of section 2204.20 were not met in making the zone change; in effect, they contend that there is no evidence to support the determinations or "findings" of the planning commission and the board of supervisors. No record of the proceedings before the planning commission or the board of supervisors was submitted to the trial court, although there were extensive and lengthy hearings. The only evidence presented on the characteristics of the rezoned property was the testimony of the chairman of the Altarinda Homeowners Association, that the rezoned property and the adjacent property, which was limited in use to single family residences, was similar in terrain and appearance, and photographs which were introduced to support his testimony.

■ In enacting the zoning ordinance, the board of supervisors performed a legislative function, and the presumption is that the ordinance is valid. (*Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 460 [202 P.2d 38].) This presumption will not be overthrown unless the plaintiff produces evidence compelling the conclusion that the ordinance is, as a matter of law, unreasonable and invalid. (*Lockard* v. *City of Los Angeles, supra,* at p. 461; *Robinson* v. *City of Los Angeles,* 146 Cal.App.2d 810, 815 [304 P.2d 814].) ■ There is also a presumption that the board ascertained the existence of necessary facts to support its action, and that the "necessary facts" are those required by the applicable standards which guided the board. (*City & County of S.F.* v. *Superior Court,* 53 Cal.2d 236, 251 [1 Cal.Rptr. 158, 347 P.2d 294]; *Chas. L. Harney, Inc.* v. *Board of Permit Appeals,* 195 Cal.App.2d 442, 445 [15 Cal.Rptr. 870].) ■ The evidence which is before us is not sufficient to overcome these presumptions. The fact that the rezoned property is similar in nature to property which was not rezoned does not make unreasonable the action of

the board of supervisors. (*Lockard* v. *City of Los Angeles, supra,* at p. 465.) Plaintiffs had "no vested right to continuity of zoning of the general area in which they reside." (*Robinson* v. *City of Los Angeles, supra,* at p. 816.) ▮ As the court said in *Case* v. *City of Los Angeles,* 142 Cal.App.2d 66, 69 [298 P.2d 50]: "It may be true that to continue the zoning restrictions upon defendants' property would confer benefits on neighboring owners, including plaintiffs, and enhance the value of their properties, but the existence of such benefits does not generate interests protected by the Constitution against diminution by governmental authorities in the proper exercise of the police power. The [county] in the exercise of its police power has the right to modify its zoning regulations from time to time."

### Delegation of Functions

▮ Appellants complain that the ordinance leaves to the planning agency the matter of density within a zone. But the rezoning resolution provides, in paragraph 10, for the maximum number of dwelling units for the entire property. Although variations from the estimated number of dwelling units are permissible within the maximum, these are not to be made by the planning director solely, but only upon approval by the planning commission after a hearing. We discern no unlawful delegation of legislative power.

The case is different from that of *People* v. *Perez,* 214 Cal.App.2d Supp. 882 [29 Cal.Rptr. 781], cited by appellants, in which a zone was created which nominally was for agricultural use, but which was made subject to varying types of residential use by special permit, no guides being given to the planning body save the most general (the identical standards given to the city council by the Government Code). In the case before us, a single use, residential, is projected.

### Asserted Conflicts of Interest

▮ The chairman of the board of supervisors was an officer of the title company which held legal title to the affected property. But the company held a bare legal title, and the trial judge found that it had no interest in the property and no interest in how it was zoned. ▮ One of the members of the planning commission owned a bar in the neighborhood but, as the trial judge found, there was no showing of an improper motive in the rezoning, and the prohibition in rule 62, chapter 1, title 4 of the California Administrative Code is not against acting on such a board by a licensee but against holding the liquor license.

## Restrictions in Deeds

Appellants' grantor was Altarinda Estates, Inc. In their deeds, the grantor expressed its intention to subdivide adjacent land (the subject land) and that it would place substantially the same restrictions thereon as were placed on that which was granted to appellants. But even in the tracts in which appellants' lands lie, few of the deeds contained the restrictions, and in the deed from Altarinda Estates, Inc. to the predecessors of real party in interest, there were, so far as the record shows, no restrictions.

■■■ The intent of the grantor to impose restrictions is insufficient; there must be joint intent of the grantor and the grantee in order to put limitations on the use of the conveyed property. (*Werner* v. *Graham*, 181 Cal. 174, 184 [183 P. 945].) Appellants rely on *Moore* v. *Ojai Improvement Co.*, 152 Cal.App.2d 124 [313 P.2d 47]; but in that case, the declared intent of the grantor to place restrictions on surrounding property owned by him was enforced in a suit against the grantor by his grantee. There was privity of contract between them, which does not exist in our case.

■■■ Untenable is appellants' theory that equitable servitudes should be declared because of notice to real party in interest of the announced intention of Altarinda Estates, Inc. The court found that the present owners did not know of the declaration of intention. Besides, actual or constructive notice of a building restriction will not suffice when the deed to the original buyer fails to create a valid servitude. (*Ross* v. *Harootunian*, 257 Cal.App.2d 292, 296 [64 Cal.Rptr. 537].)

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied October 28, 1970, and appellants' petition for a hearing by the Supreme Court was denied November 25, 1970.