[Civ. No. 27215. First Dist., Div. One. Feb. 9, 1971.]

FREDERICK M. VAN SICKLEN et al., Plaintiffs and Appellants, v. ROBERT E. BROWNE et al., Defendants and Respondents.

## COUNSEL

Wool, Richardson, Colbert & Shea, Wool, Richardson & Colbert, Breed, Robinson & Stewart, Stark, Stewart, Simon & Sparrowe and Fred A. Wool for Plaintiffs and Appellants.

Haskell M. Goodman, City Attorney, for Defendants and Respondents.

## OPINION

**MOLINARI, P. J.**—Petitioners appeal from a judgment denying the issuance of a peremptory writ of mandate and discharging the alternative writ upon a petition to review the action of the City Council of the City of Milpitas

sustaining the action of the city planning commission denying petitioners' application for a use permit to construct an automobile service station on property which they own within the boundaries of Milpitas.

Milpitas is a small, geographically compact community in northeast Santa Clara County and was incorporated in 1954 as a general law city. Pursuant to Government Code sections 65300 and 65850 the city adopted, respectively, a Comprehensive Master Plan and a Milpitas Zoning Ordinance. (Ordinance No. 38.)

Among the relevant provisions of the Master Plan was the following statement of goals and objectives: "To develop a circulation and a transportation system which is integrated with the community pattern of living, working and shopping areas and which will provide for the safe, convenient and efficient movement of goods and people within the city and to other parts of the region. . . . To . . . strengthen and promote development through stability and balance. . . ."

The zoning ordinance, as expressed in section 1.02, states its purpose as follows: ". . . to encourage the most appropriate use of land throughout the City; to stabilize and conserve the value of property; to provide adequate light, air and reasonable access; to secure safety from fire and other dangers; to prevent overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public improvements; and in general to promote the public health, safety, peace, morals, comfort and welfare, all in accordance with a comprehensive Zoning Ordinance and Master Plan."

The zoning ordinance, in section 8.90, established an "HS" Highway Service District whose stated purpose, among other things, is to provide for the wide range of personal and business services primarily oriented to the automobile customer. Among the uses permitted in such a district are automobile service stations located upon specified lot areas containing a specified minimum width. The zoning ordinance provides in section 17.00 thereof as follows: "CONDITIONAL USES PERMITTED BY COMMISSION Section 17.01 LOCATION OF PERMITTED USES: Wherever it is stated in this Ordinance that the following uses may be permitted in a district, if their location is first approved by the Commission, said uses are deemed to be a part of the Comprehensive Master Plan, or its objectives, and shall conform thereto. Before the Commission makes its final determination, it shall hold a public hearing. Such uses include the following: Section 17.02 . . . automobile service stations. . . ."

Petitioners applied to the planning commission for a use permit for the

construction of an automobile service station on a lot owned by them in the "HS" Highway Service District. The commission denied the application and in its decision stated the following reasons: "1) Approval would create a further proliferation of this type of land use in a neighborhood already adequately served by service stations located more logically at a major intersection. 2) Approval would open the door for at least two additional stations at the Wilson Way intersection and would create a precedent that would make it difficult for the city to deny applicants on other corners. 3) There is no demonstrated need for an additional service station in this neighborhood at this time. Adjacent stations have a history of turnover in management and are known to have been vacant for extended periods in the recent past. 4) Approval would establish a service station use too close to a developed residential area without the logic of it being at the intersection of two heavily traveled major streets. 5) Approval on the basis of a future freeway location seems, at best, premature. While freeway agreements are in existence, actual construction of the freeway is many years away and traffic patterns created by the freeway are neither definite or known. Detailed ramp drawings are not available."

Petitioners contend that the denial of their application for the permit was arbitrary and capricious because the commission has no discretion and was obliged to grant the use permit if the parcel for the proposed service station met the minimum width and area requirements set forth in the zoning ordinance. There is no dispute that petitioners' lot met the frontage and area requirements of the zoning ordinance. Respondent city contends, however, that in addition to meeting these requirements the proposed use must conform to the objectives of the Comprehensive Master Plan. We agree with respondent.

The zoning ordinance expressly provides that automobile service stations may be permitted in the Highway Service District if their location conforms to the objectives of the Master Plan. (§ 17.01.) The ordinance also provides in its stated purpose that its objectives are to be accomplished in accordance with the Master Plan. (§ 1.02.) It is apparent, therefore, that the planning commission is vested with considerable discretion in determining whether the proposed use subserves the Master Plan's fundamental objectives. One of these objectives is that which seeks to "strengthen and promote development through stability and balance. . . ."

■■ The planning commission, after an extensive hearing, concluded that "approval would create a further proliferation of this type of land use in a neighborhood already adequately served by service stations located

more logically at a major intersection,"[1] and that "approval would establish a service station use too close to a developed residential area." This determination is a legitimate exercise of the discretionary power vested in the planning commission by section 17.01 of the zoning ordinance. Since there is no indication that the planning commission acted arbitrarily or capriciously, its findings must be upheld. (See *Garden Grove Congregation* v. *City of Garden Grove,* 176 Cal.App.2d 136, 139, 142 [1 Cal.Rptr. 65].)

We observe that the traditional purpose of the conditional use permit is to enable a municipality to exercise some measure of control over the extent of certain uses, such as service stations, which, although desirable in limited numbers, could have a detrimental effect on the community in large numbers. Here, in view of the specifically stated purposes of both the zoning ordinance and the Master Plan, it is inconceivable that it was the legislative intent that use permits for service stations would be granted for any number of service stations so long as each parcel met the minimum width, frontage and area requirements.

Petitioners place strong reliance on *Redwood City Co. of Jehovah's Witnesses* v. *City of Menlo Park,* 167 Cal.App.2d 686 [335 P.2d 195], in support of their contention that the city exhausted any discretion it might have had when it adopted zone classifications with specific standards and requirements. That decision held that a proposed church which met specific parking requirements contained in a zoning ordinance could not be denied a permit merely because the city council deemed the ordinance in question to be inadequate. (At pp. 696-697.) The reviewing court noted that since the city was acting in a nonlegislative capacity when acting on the application for a use permit, it was bound by the terms of the ordinance.

We perceive the *Jehovah's Witnesses* case to be distinguishable from the instant case in that here the planning commission did not deny petitioners' application because the proposed service station failed to meet established requirements or that the requirements of the ordinance were inadequate. The permit was denied because the planning commission concluded, pursuant to a proper exercise of discretion granted by the zoning ordinance, that further proliferation of service stations in the proposed area would be detrimental to the balanced development envisionsd by the Master Plan.

Reliance is also placed by petitioners on *Jehovah's Witnesses* for the contention that the Master Plan standards under which the planning commission acted are too indefinite and uncertain to be legally valid. In that case standards contained in the general phrases " 'the public health, safety, com-

---

[1] The record shows that the proposed location is about 600 feet from a major intersection at which there are presently four gas stations, one at each corner.

fort, convenience and general welfare' " and " 'detrimental to the public welfare or injurious to the property or improvement in said neighborhood' " were held not to constitute definitive standards governing the issuance of use permits. (167 Cal.App.2d at p. 697.) As pointed out in *Stoddard* v. *Edelman*, 4 Cal.App.3d 544, 548, fn. 2 [84 Cal.Rptr. 443], which holds that a "general welfare standard" is constitutionally adequate, the *Jehovah's Witnesses* case cannot be reconciled with the later decision by our Supreme Court in *City & County of S. F.* v. *Superior Court*, 53 Cal.2d 236 [1 Cal. Rptr. 158, 347 P.2d 294].[2] In the latter case the overall standard of " 'promotion of the public health, safety, comfort, convenience and general welfare,' " laid down for the guidance of the planning commission in passing on building permit applications, was held to be adequate. (At p. 250.)

In *Stoddard*, the "general welfare standard" sustained by the appellate court was a provision that the zoning administrator may issue a conditional use permit ". . . if he finds that the proposed location will be desirable to the public convenience or welfare and will be in harmony with the various elements and objectives of the Master Plan." (4 Cal.App.3d at p. 548; see also *Case* v. *City of Los Angeles*, 218 Cal.App.2d 36, 42 [32 Cal.Rptr. 271]; *Wheeler* v. *Gregg*, 90 Cal.App.2d 348, 362-363 [203 P.2d 37]; *Tustin Heights Assn.* v. *Bd. of Supervisors*, 170 Cal.App.2d 619, 634-635 [339 P.2d 914]; and see Cal. Zoning Practice (Cont.Ed.Bar 1969) §§ 7.67-7.71, pp. 302, 304, 306-307.)

In the light of the foregoing decisions, we hold that the criteria for determining an application for a conditional use permit couched in a general statement of standards such as those prescribed by the instant zoning ordinance and Master Plan are constitutionally adequate.

Petitioners' final contention is that the city denied the use permit for economic rather than planning considerations resulting in an invalid attempt to regulate competition through zoning laws. They refer specifically to the planning commission's finding that there was no demonstrated need for an additional service station in the neighborhood at this time.

Although cities may not use zoning powers to regulate economic competition (*City of Miami* v. *Woolin*, 387 F.2d 893; *Circle Lounge & Grille* v. *Board of Appeal of Boston*, 324 Mass. 427 [86 N.E.2d 920]; *Henle* v. *City of Euclid*, 97 Ohio App. 258 [118 N.E.2d 682, 125 N.E.2d 355]), it is also recognized that land use and planning decisions cannot be made in any community without some impact on the economy of the community. As stated in *Metromedia, Inc.* v. *City of Pasadena*, 216 Cal.App.2d 270, 273 [30 Cal.Rptr. 731], "Today, economic and aesthetic considerations together

---

[2]No petition was filed for a hearing by the Supreme Court in the *Jehovah's Witnesses* case.

constitute the nearly inseparable warp and woof of the fabric upon which the modern city must design its future." Taking cognizance of this concept we perceive that planning and zoning ordinances traditionally seek to maintain property values, protect tax revenues, provide neighborhood social and economic stability, attract business and industry and encourage conditions which make a community a pleasant place to live and work. ▪ Whether these be classified as "planning considerations" or "economic considerations," we hold that so long as the primary purpose of the zoning ordinance is not to regulate economic competition, but to subserve a valid objective pursuant to a city's police powers, such ordinance is not invalid even though it might have an indirect impact on economic competition.

▪ Intensity of land use is a well-recognized and valid city concern and relates to both health and safety factors and to proper zoning practice. Statutory recognition of this concern is found in Government Code section 65850, subdivision (c), which provides that the legislative body of any county or city by ordinance may regulate the intensity of land use. Such intensity, we apprehend, encompasses within its purview the degree of saturation in a particular area of land devoted to automobile service stations.

Courts in other states have recognized that "density" and overconcentration of service stations justify regulation. (See *Blair* v. *Board of Adjustment of Borough of Hatboro,* 403 Pa. 105 [169 A.2d 49]; *Kramer* v. *Baltimore,* 166 Md. 324, 334 [171 A. 70, 74]; *Ballard* v. *Roth,* 141 Misc. 319 [253 N.Y.S. 6, 14].) In *Blair* it was held that permits could properly be refused for service stations when the granting of the permits would result in five stations within a radius of 350 feet and 10 stations in a community covering only one and one-half square miles in area and an increase in traffic. In *Kramer* it was observed that the number of service stations already allowed ". . . may have reached the limit of safety. The multiplication of such stations may in itself be a menace, . . ." (166 Md. at p. 334 [171 A. at p. 74].) The rationale of these decisions appears to be that since service stations store and use products which are highly inflammable and explosive, it is evident that an increase in the number of such stations in a small area increases the danger to the public notwithstanding the care and caution with which the business may be conducted. (See McQuillin, Municipal Corporations, § 25.178, pp. 597-604.)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 8, 1971.