[Civ. No. 38981. First Dist., Div. Three. Mar. 28, 1977.]

ENSIGN BICKFORD REALTY CORP., Plaintiff and Respondent, v.
CITY COUNCIL OF THE CITY OF LIVERMORE,
Defendant and Appellant.

470

**COUNSEL**

Robert J. Logan, City Attorney, and Gary B. Reiners, Assistant City Attorney, for Defendant and Appellant.

Heller, Ehrman, White & McAuliffe, Douglas M. Schwab, Daniel E. Titelbaum and Lloyd M. Haines for Plaintiff and Respondent.

## OPINION

**SCOTT, J.**—The City of Livermore appeals from a judgment granting Ensign Bickford Realty Corporation's petition for a writ of mandamus directing appellant city to reconsider Bickford's rezoning application.

Respondent Bickford is the owner of a parcel of real property located in the northeast section of the City of Livermore. The property was annexed by the city in 1968, and shortly thereafter was zoned "CN," a classification permitting neighborhood commercial facilities. The CN zoning of the property was at all times consistent with the city's general plan and was retained until June 3, 1974, when the city rezoned the property "RS-4," for residential use only. In 1975 Bickford applied to the city council for rezoning to CN, stating that a neighborhood shopping center would presently be constructed on its property and that Tradewell Stores, Inc., a grocery store chain, would be the major tenant. The city planning commission, by a resolution adopted on May 6, 1975, recommended against the CN zoning. Its recommendation was based upon the following factors: "1. That although the proposed rezoning is in conformance with the General Plan, the public necessity, convenience, and general welfare does not require the adoption of 'CN' zoning of this property at this time. 2. That the population base to support a Neighborhood Commercial area, as outlined in the General Plan, is not adequate at this time, nor is it anticipated that the neighborhood population will become large enough in the immediate future to justify rezoning at this time. 3. Inasmuch as the principal use proposed for the subject site is one intended to serve the 'community,' the intent of the proposed rezoning to 'CN' would not be served (provision of day to day shopping convenience to the surrounding neighborhood). 4. That current lack of sewer capacity makes it unlikely that necessary supporting population will develop in the near future."

On July 28, 1975, following a public hearing, the city council denied Bickford's application by a vote of three to one. The city council hearing was recorded and a transcript thereof was introduced into evidence and considered by the court below. It appears from the discussion at the public hearing that a portion of the northeast section of Livermore, in

the so-called Springtown area, had already been zoned CN. The council wanted to develop this area before permitting commercial development elsewhere in the northeast section of Livermore. Various members of the council expressed the view that although there was a sufficient population base in the area to support one shopping center, the population was insufficient to sustain two such centers and the commercial development should be located in Springtown. Three of the four council members present felt that to allow the development of a shopping center on Bickford's property would frustrate the announced policy of promoting development of the Springtown area where land had already been zoned CN for a neighborhood commercial center.

Thereafter, at the request of the city council, the city manager wrote to Tradewell Stores, Inc., urging that Tradewell consider locating its store in the proposed Springtown shopping complex. The letter expressed the unanimous view of the city council that the northeast sector of Livermore (wherein respondent's property is located) needed neighborhood shopping accommodations.

The trial court found that the city council, in denying respondent's application for rezoning, failed to make findings of fact as required by California law and by the Livermore Zoning Ordinance. The court further found that the purpose in denying respondent's application was to encourage development of the Springtown CN zoned property by eliminating a competitive economic threat to such property, and that the council's decision was not predicated upon considerations of public health, welfare, safety or morals. The court concluded that the refusal of the city to rezone its property was arbitrary and capricious, unconstitutionally discriminatory against Bickford, and denied it equal protection of the laws.

Appellant contends that the decision of the city council in refusing to rezone respondent's property from a residential to a commercial classification was a valid exercise of the police power, and hence did not constitute an abuse of discretion or a denial of equal protection. It is also argued that the council was not required to make findings in support of its decision. We agree. We have concluded that the city council acted reasonably in denying respondent's rezoning application and that the writ of mandamus should have been denied.

I. In denying respondent's application for zoning, the city council did not make findings except to adopt the recommendation of

the planning commission. Findings are required in actions to review quasi-judicial activities of administrative agencies pursuant to Code of Civil Procedure section 1094.5 (administrative mandamus). (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515-517 [113 Cal.Rptr. 836, 522 P.2d 12].) The zoning of real property by a city, however, is a legislative function, not a quasi-judicial activity, and is therefore reviewable by ordinary, or so-called traditional, mandamus pursuant to Code of Civil Procedure section 1085. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; *San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205, 212, fn. 5 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973]; *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453 [202 P.2d 38, 7 A.L.R.2d 990]; *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826 [323 P.2d 71]; *Tandy* v. *City of Oakland* (1962) 208 Cal.App.2d 609, 612 [25 Cal.Rptr. 429].) As to these legislative functions of an administrative agency, findings are not required. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* at p. 517.) Respondent cites *Fasano* v. *Board of Commissioners* (1973) 264 Ore. 574 [507 P.2d 23], wherein the Oregon Supreme Court held that municipal zoning actions short of comprehensive revision of the zoning ordinance are judicial in character. The rule in California, however, is clearly to the contrary. Therefore, it is concluded that a city council in enacting or amending a zoning ordinance is not required to make express findings of fact as to the public purpose of the ordinance or its relation to the police power. (8 McQuillin, Municipal Corporations (3d rev. ed. 1976) Zoning, § 25.18, p. 47.)

Section 30.42 of the Livermore Municipal Code, 1959, provides: "In order to amend the (Zoning) Ordinance the City Council shall find the proposed amendment is in conformance with the General Plan of the City of Livermore and that public necessity, convenience and general welfare require the adoption of the proposed amendment." The ordinance is inapplicable under the facts of this case in that the city council rejected the proposed zoning. The ordinance does not require a finding where the zoning is not adopted. In any event, in adopting the planning commission's recommendation, the city council in fact found that the public interest, convenience and general welfare did not require the adoption of the CN zoning. Such was a clear statement of the council's basis for denying the zoning application.

■ II. It is fundamental that zoning ordinances, when reasonable in object and not arbitrary in operation, constitute a justifiable exercise

of the police power. (*Miller* v. *Board of Public Works* (1925) 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479]; *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453 [202 P.2d 38, 7 A.L.R.2d 990].) In determining whether a particular ordinance represents a valid exercise of the police power, the courts "simply determine whether the statute or ordinance reasonably relates to a legitimate governmental purpose." (*G & D Holland Construction Co.* v. *City of Marysville* (1970) 12 Cal.App.3d 989, 994 [91 Cal.Rptr. 227].) Every intendment is in favor of the validity of the exercise of the police power, and even though a court may differ from the determination of the legislative body, the ordinance will be upheld so long as it bears substantial relation to the public health, safety, morals or general welfare. (*Wilkins* v. *City of San Bernardino* (1946) 29 Cal.2d 332, 337, 338-339 [175 P.2d 542]; *Miller* v. *Board of Public Works, supra,* at p. 490; *Town of Los Altos Hills* v. *Adobe Creek Properties, Inc.* (1973) 32 Cal.App.3d 488, 508 [108 Cal.Rptr. 271].)

■ The enactment of a zoning ordinance is a legislative function and is presumptively valid. The presumption may be upset if the evidence compels a conclusion that the ordinance is, as a matter of law, unreasonable or invalid. (*Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453; *Orinda Homeowners Committee* v. *Board of Supervisors* (1970) 11 Cal.App.3d 768, 775 [90 Cal.Rptr. 88, 43 A.L.R.3d 880].) A zoning ordinance is unconstitutional only if no substantial reason exists to support the determination of the city council. If the reasonableness of the ordinance is reasonably debatable, the ordinance must be upheld. (*Reynolds* v. *Barrett* (1938) 12 Cal.2d 244, 249 [83 P.2d 29]; *Town of Los Altos Hills* v. *Adobe Creek Properties, Inc., supra,* 32 Cal.App.3d at p. 499.)

In *Lockard* v. *City of Los Angeles, supra,* the court stated: "In enacting zoning ordinances, the municipality performs a legislative function, and every intendment is in favor of the validity of such ordinances. [Citation.] It is presumed that the enactment as a whole is justified under the police power and adapted to promote the public health, safety, morals, and general welfare. [Citation.] [¶] The courts will, of course, inquire as to whether the scheme of classification and districting is arbitrary or unreasonable, but the decision of the zoning authorities as to matters of opinion and policy will not be set aside or disregarded by the courts unless the regulations have no reasonable relation to the public welfare or unless the physical facts show that there has been an unreasonable, oppressive, or unwarranted interference with property rights in the exercise of the police power. [Citations.] The wisdom of the prohibitions

and restrictions is a matter for legislative determination, and even though a court may not agree with that determination, it will not substitute its judgment for that of the zoning authorities if there is any reasonable justification for their action. [Citations.] In passing upon the validity of legislation it has been said that 'the rule is well settled that the legislative determination that the facts exist which make the law necessary, must not be set aside or disregarded by the courts, unless the legislative decision is clearly and palpably wrong and the error appears beyond reasonable doubt from facts or evidence which cannot be controverted, and of which the courts may properly take notice.' [Citations.]" (33 Cal.2d at pp. 460-461.)

■ The sole issue here is whether there is any reasonable basis in fact to support the legislative determination of the city council. (See *Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342].) We are not bound by the findings of the trial court. As stated in *Lockard, supra,* 33 Cal.2d at page 462: "The findings and conclusions of the trial court as to the reasonableness of a zoning ordinance are not binding on an appellate court if the record shows that the question is debatable and that there may be a difference of opinion on the subject."

At the public hearing held on the matter, it was generally agreed that the northeastern section of the city needed a shopping center, and that the population base in that area would support one, but not two such centers. The issue, then, was where the shopping center should be located. The council members, after discussing the issue among themselves and hearing the views of residents in the community, determined that it would be in the best interests of the city to attract new residents to Springtown, and hence decided to encourage the development of a commercial complex in that area. Thus it was determined that the CN zoning would be limited to Springtown, already zoned for such use, and the surrounding area would remain residential.

Bickford contends that the purpose of the city council in making the above decision was to restrict competition, and that inasmuch as the restriction of competition or the protection of monopolies is an impermissible zoning objective, the city council's decision cannot stand. Where the sole purpose of a zoning ordinance or decision is to regulate or restrict business competition, the regulation is subject to challenge. It is not the proper function of a zoning ordinance to restrict competition or to protect an enterprise which may have been encouraged by a prior

zoning classification. (*Wilkins* v. *City of San Bernardino* (1946) 29 Cal.2d 332, 340 [175 P.2d 542]; *Pacific P. Assn.* v. *Huntington Beach* (1925) 196 Cal. 211, 216 [237 P. 538, 40 A.L.R. 782]; *Bernstein* v. *Smutz* (1947) 83 Cal.App.2d 108, 119 [188 P.2d 48].)

█ Despite the principle that cities may not directly restrict competition under the guise of the zoning power, it must be recognized that land use and planning decisions cannot be made in a vacuum, and all such decisions must necessarily have some impact on the economy of the community. (1 Anderson, American Law of Zoning (2d ed. 1976) § 7.28, pp. 605-606.) In *Van Sicklen* v. *Browne* (1971) 15 Cal.App.3d 122, 125 [92 Cal.Rptr. 786], a conditional use permit for a gas station was denied on the ground, inter alia, that " 'Approval would create a further proliferation of this type of land use in a neighborhood already adequately served by service stations . . . . There is no demonstrated need for additional service stations in this neighborhood at this time.' " The court stated (at pp. 127-128): "Although cities may not use zoning powers to regulate economic competition [citations], it is also recognized that land use and planning decisions cannot be made in any community without some impact on the economy of the community. As stated in *Metromedia, Inc.* v. *City of Pasadena,* 216 Cal.App.2d 270, 273 [30 Cal.Rptr. 731], 'Today, economic and aesthetic considerations together constitute the nearly inseparable warp and woof of the fabric upon which the modern city must design its future.' Taking cognizance of this concept we perceive that planning and zoning ordinances traditionally seek to maintain property values, protect tax revenues, provide neighborhood social and economic stability, attract business and industry and encourage conditions which make a community a pleasant place to live and work. Whether these be classified as 'planning considerations' or 'economic considerations,' *we hold that so long as the primary purpose of the zoning ordinance is not to regulate economic competition, but to subserve a valid objective pursuant to a city's police powers, such ordinance is not invalid even though it might have an indirect impact on economic competition.*" (Italics added.) Bickford urges that *Van Sicklen* should be read as permitting the restricting of competition only when the business activity is hazardous. The court did discuss the legislative right to regulate overconcentration of gas stations because they "use products which are highly inflammable and explosive," and an increase in their number in a small area "increases the danger to the public." (15 Cal.App.3d at p. 128.) We view this as a supplemental rationale for the upholding of the city's determination. (See Hagman, Cal. Zoning Practice (Cont.Ed.Bar Supp. 1975) § 5.14, p. 95.)

■ Here, the city council determined that the area needed and would support one shopping center, and that to further the long-range development plan for the city, the shopping center should not be located on Bickford's property, but in Springtown. This would have the effect of encouraging residential and commercial development in that area. It would also undoubtedly have the effect of decreasing the market or lease value of respondent's property. By its very nature, a zoning ordinance may be expected to depress the value of some land while it operates, in its total effect, to achieve an end which will benefit the whole community. An ordinance is not constitutionally defective where it classifies for residential use land which would yield a greater profit if used for business purposes. Nor does the fact that two parcels of property which are similar in nature but zoned differently make the zoning unreasonable. (*Orinda Homeowners Committee* v. *Board of Supervisors* (1970) 11 Cal.App.3d 768, 775-776 [90 Cal.Rptr. 88, 43 A.L.R.3d 880].)

The cases cited by respondent in support of its contention that appellant was unlawfully attempting to restrict competition are distinguishable. In *In re White* (1925) 195 Cal. 516 [234 P. 396], and *Wickham* v. *Becker* (1929) 96 Cal.App. 443 [274 P. 397], the municipality limited the commercial district to business enterprises already established to the practical exclusion of any further business development, thereby creating a monopoly which had the effect of prohibiting competition. Here, there is no evidence that the city was attempting to create a monopoly for existing businesses in Livermore. In *Abbey Land & Improvement Co.* v. *County of San Mateo* (1914) 167 Cal. 434 [139 P. 1068], the court held that it was an unreasonable exercise of police power for a county to prohibit more than one crematory in any one township. The court observed that more than one crematory could be conducted without public injury and in a manner which would not constitute a public nuisance or cause public injury. Here, the evidence before the city council clearly established that more than one commercial business district in the northeast section of Livermore would be injurious to the public. The court in *Abbey* noted (at p. 440) that it "is only when the public health, safety, convenience, or welfare is or may be jeopardized that the police power may be invoked for its protection by restriction or regulation of the private rights of persons and property." Here, the city is attempting to regulate *where,* within the city, business will be developed. In furtherance of this legitimate end, it is necessary to permit business development in one area before allowing commercial development in another. The economic impact upon the property involved is only

incidental. The primary purpose is clearly the reasonable regulation of land use. (See *Van Sicklen* v. *Browne* (1971) 15 Cal.App.3d 122 [92 Cal.Rptr. 786].) ■ There is no evidence, nor can it be inferred, that the city council was attempting to permit commercial development on one parcel and deny it as to another for the purpose of creating a business monopoly or to unreasonably regulate the commercial development of the city. To the contrary, the council was regulating the commercial growth of the city as it related to the needs of the residential areas for that commercial development.

■ Contrary to respondent's assertions, the motive of the city council in declining to amend its zoning ordinance is irrelevant to any inquiry concerning its reasonableness. The reasonableness of its action is to be judged on the objective results of the decision. (*McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 894 [264 P.2d 932]; *Orinda Homeowners Committee* v. *Board of Supervisors* (1970) 11 Cal.App.3d 768 [90 Cal.Rptr. 88, 43 A.L.R.3d 880]; see also *County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721 [119 Cal.Rptr. 631, 532 P.2d 495].) If there is any rational basis for a zoning decision from the objective facts, the actual motive for the decision becomes immaterial. ■ Here, the record is replete with objective facts to support the denial of respondent's rezoning application. Respondent's property had been zoned CN at one time, then rezoned to residential. There is no suggestion that such rezoning was improper. It was, in fact, a decision made consistent with the city's general plan. The effect of the council's decision here was to maintain the zoning status quo. There was testimony at the hearing from residents within the affected area that rezoning would have a deleterious impact on the surrounding property and the general neighborhood. The court erred in concluding that the council's action was improperly motivated solely from economic considerations relating to competition. In *Village of Arlington Heights* v. *Metropolitan Housing Development Corp.* (1977) 429 U.S. 252 [50 L.Ed.2d 450, 97 S.Ct. 555], the United States Supreme Court discussed with approval the general principle that motivation for legislative acts is not material, noting (at pp. 265-266 [50 L.Ed.2d at pp. 464-465, 97 S.Ct. at p. 563]): "Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the 'dominant' or 'primary' one." However, the court stated, "When there is a proof that a '[racially] discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified." No racial motivation is suggested in the

instant case; therefore, judicial deference must be given to the legislative act.

█ At oral argument respondent conceded, as indeed it must, that inquiry into the motives of the councilmen to determine their reasons for denying the rezoning would be improper. (See *County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721 [119 Cal.Rptr. 631, 532 P.2d 495].) Respondent argues, however, that when a record is made, as in the instant case, wherein various councilmen in fact state their reasons, the court must consider those reasons in determining whether the decision was arbitrary or unreasonable. Based upon this analysis, respondent argues that the record demonstrates that the councilmen were motivated by economic and business competition factors and not by reasons based upon the public health, safety and welfare. To accept respondent's argument would place an onerous burden on legislators to carefully articulate for the record all of the reasons and motives behind their decisions. To fail to do so would put their action in peril. As often as not, members of administrative bodies make decisions for unarticulated reasons. Often the discussions at a public hearing are guided by the direction taken by members of the public who speak. These discussions may or may not include what is significant to a given member of the agency. (See *Village of Arlington Heights* v. *Metropolitan Housing Development Corp., supra.*) There are a host of reasons why the utterances of councilmen at public hearings cannot be said to encompass the totality of their thought processes. It would be manifestly burdensome and unproductive to require that once a councilman started discussing the merits of a decision he was being called upon to make, he must set forth all of his opinions on the subject under discussion. Such an inhibiting factor would lead inevitably to silent council meetings. The members of the public would lose the benefit of open discussion of the public business. Conversely, public statements by members of the city council to the effect that their decision is based upon considerations of public health, safety or welfare cannot make the decision valid if it is in fact arbitrary or unreasonable. The decision of the city council must be found reasonable or unreasonable based upon its effect in light of the facts as they exist relevant to that decision.

█ We conclude that the denial of Bickford's zoning application was not unreasonable nor a denial of its right to equal protection under the law. The record clearly establishes a rational basis for the city's action as a proper exercise of its police power.

The judgment is reversed, with directions that judgment be entered in favor of appellant.

Draper, P. J., and Devine, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 26, 1977.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.