161 Cal.App.3d 850 (1984)
207 Cal. Rptr. 880
JAY CORMIER, Plaintiff and Appellant,
v.
COUNTY OF SAN LUIS OBISPO et al., Defendants and Respondents.
Docket No. B004579.
Court of Appeals of California, Second District, Division Six.
November 14, 1984.
*852 COUNSEL
Stephen N. Cool for Plaintiff and Appellant.
James B. Lindholm, Jr., County Counsel, and James B. Orton, Deputy County Counsel, for Defendants and Respondents.
OPINION
GILBERT, J.
Here we decide that the adoption of an amendment to a county's general plan which results in rezoning of property within that county is a legislative act which does not require specific findings.
On March 10, 1982, Jay Cormier filed a petition for writ of mandate to compel the County of San Luis Obispo (County), its board of supervisors (Board) and planning commission (Commission) to reclassify and rezone his seven-acre parcel of real property. He combined this with a complaint for declaratory relief to determine whether the County's general plan amendment which had down zoned his property was invalid. Cormier alleged, among other things, that the San Luis Obispo Land Use Element/Land Use Ordinance of 1980 was invalid as applied to down zone his property, and that the Board's action was arbitrary, discriminatory, and capricious and constituted an invalid exercise of local police and zoning powers. Cormier further alleged that the Board did not make requisite findings of fact that the down zoning and reclassification bore a substantial and reasonable relationship to the promotion of the public health, safety and welfare.
We affirm the trial court's decision denying mandamus because the Board acted within its authority in adopting the ordinance, specific findings were not required for this legislative act, and the ordinance is valid and constitutional.

*853 FACTS
In August 1977 Cormier purchased the subject seven-acre parcel of unimproved real property near the interchange of U.S. Highway 101 and Thompson Road for $150,000. At that time it was zoned, as shown by the South County General Plan, C-1-D (highway commercial) and Cormier planned to develop the property with a motel-restaurant. Later that year, Cormier discovered that as part of a comprehensive revision to the South County General Plan (hereafter the General Plan) a proposal had been prepared by the staff of the San Luis Obispo County Planning Department (Department) recommending a change of classification and a down zoning of his property to rural-residential. The C-1-D zoning permits development for highway-oriented uses with prior County approval, while rural-residential zoning limits development to a single house or a restaurant with restricted use.
In November 1977 Cormier contacted the Department opposing the proposed zoning change. During 1978 he also contacted a local zoning advisory body called Nipomo Advisory Group (NAG-pardon the acronym) to persuade them to revise their recommendation to down zone his property. He was unsuccessful. At the same time, Cormier enlisted the services of an architect who promptly contacted the Department and prepared a development concept and drawings.
Meanwhile NAG and the Department staff went forward with proceedings to down zone the Cormier property. The proposed change was incorporated in a "hearing draft" of the General Plan which was prepared for the Commission.
When the Commission began formal hearings in early 1980, Cormier appeared to protest the change. Despite his protest, on July 1, 1980, the Commission adopted a motion recommending reclassification of Cormier's property to rural-residential. It also instructed the Department staff to bring the matter to the attention of the Commission again should NAG change its position with respect to the zoning change.
NAG changed its position on July 3, 1980, and recommended against altering the zoning. William Blount, NAG chairman, hand-delivered a letter announcing this change to Bryce Tingle in the Department's land use section. The staff did not advise the Commission that NAG had changed its position. On July 10, the Commission held a meeting and adopted a formal resolution recommending to the Board the new plan, which down zoned Cormier's property.
*854 On September 3, 1980, Cormier submitted a formal development plan for the motel-restaurant to the County. Thereafter, the Board conducted hearings concerning the new land use element. It received the Commission's recommendation that the rural-residential classification be adopted for Cormier's property. It also considered the testimony of Cormier, who presented a copy of NAG's letter of July 7 which recommended retention of the commercial zoning designation. Bryce Tingle testified that he had never seen the letter before.
On September 22, 1980, the Board adopted a resolution with the burdensome title "In The Matter Of The Adoption Of The Land Use Element, Being A Portion Of The Long-Term General Plan Of The County Of San Luis Obispo." The land use element was to become operative on the effective date of the companion land use ordinance or January 2, 1981, whichever occurred first. On December 18, 1980, the Board adopted ordinance No. 2050, the land use ordinance, with an effective date of January 17, 1981. No separate action to down zone the property (Gov. Code, § 65853) was taken since the land use ordinance had the effect of adopting new zoning regulations for the County (Gov. Code, § 65800 et seq.) and bringing the County's zoning regulation into conformity with the recently adopted land use element (Gov. Code, § 65860, subd. (c)).
Notwithstanding the change in the General Plan, the Department staff continued to process Cormier's application to develop the property as a motel-restaurant until it became apparent that Cormier would not modify his application. In April 1981 the staff declined to process it further because it was inconsistent with the General Plan. Cormier promptly applied to the Board for a General Plan change to restore commercial zoning to his property. The Board on June 15, 1981, denied this request.
At the hearing in the trial court a real estate appraiser testified that if water and sewer services were available, Cormier's property had a value of $315,000 for commercial use, but a value of only $75,000 for rural-residential use. Cormier testified that he believed the value of the property was $576,000 for commercial use.
The trial court found that the value of the property as down zoned was 25 percent or less of its value as commercial property and that Cormier suffered economic detriment equaling or exceeding $250,000. The trial court further found that neither the General Plan document nor the Board's resolution adopting the land use element of the land use ordinance contained any specific findings of fact with respect to the down zoning of Cormier's property. It nonetheless denied the petition for writ of mandate or declaratory relief.

*855 DISCUSSION

I
(1) Cormier lacks legal authority for his contention that the Board was required to make findings on the record to support its resolution adopting the land use element/land use ordinance. The thrust of Cormier's argument is that the decision to change the zoning of his property, thus reducing its value by at least $250,000, should require specific findings of fact by the legislative body that the action is necessary for the public health, safety or welfare. He relies upon Topanga Assn. for a Scenic Community v. County of Los Angeles (1974) 11 Cal.3d 506 [113 Cal. Rptr. 836, 522 P.2d 12] where, on appeal by a property owners' group from the granting of a variance for a mobilehome park, the court required the legislative body to "... render findings sufficient both to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the board's action...." (Id. at p. 514.) This case is distinguishable because the granting of a variance to an existing zoning ordinance is an administrative or adjudicative act which requires findings and is reviewable by administrative mandamus. (Code Civ. Proc., § 1094.5.)
The actions of the legislative body in enacting zoning regulations are generally held to be legislative. For instance, a city council acts in a legislative capacity when it adopts a General Plan amendment. This includes an amendment to a general plan. (Yost v. Thomas (1984) 36 Cal.3d 561 [205 Cal. Rptr. 801, 685 P.2d 1152].) This action is reviewable under Code of Civil Procedure section 1085. (Karlson v. City of Camarillo (1980) 100 Cal. App.3d 789, 798 [161 Cal. Rptr. 260]; Arnel Development Co. v. City of Costa Mesa (1980) 28 Cal.3d 511, 524 [169 Cal. Rptr. 904, 620 P.2d 565].)
Therefore, the Board was not required to make factual findings on the record in support of its action. (Ensign Bickford Realty Corp. v. City Council (1977) 68 Cal. App.3d 467 [137 Cal. Rptr. 304].) Only under special circumstances, not here applicable, have findings been required. (See, e.g., Mountain Defense League v. Board of Supervisors (1977) 65 Cal. App.3d 723 [135 Cal. Rptr. 588] [findings required when board of supervisors engages in quasi-judicial action granting a zoning variance for a development]; Village Laguna of Laguna Beach, Inc. v. Board of Supervisors (1982) 134 Cal. App.3d 1022 [185 Cal. Rptr. 41] [board of supervisors required to make sufficient findings in adopting an amendment to the General Plan to permit development of specific real property].)
*856 Here, the Board's amendment of the General Plan was not a quasi-judicial act since it did not focus on a specific development under existing law. The Board instead performed a legislative function enacting rules which would govern the future uses of all property encompassed within the General Plan. (Mountain Defense League v. Board of Supervisors, supra, 65 Cal. App.3d 723, 729.)

II
Cormier also contends that the Board's action in down zoning his property was arbitrary, and capricious, constituting an invalid and excessive exercise of the local police and zoning powers. The trial court's finding that the ordinance was constitutionally valid because the Board did not act arbitrarily or unreasonably is supported by the record.
(2) The standard of review which the trial court applied to test the validity of the Board's action in enacting the ordinance was the "fairly debatable" standard set forth in Associated Home Builders etc., Inc. v. City of Livermore (1976) 18 Cal.3d 582 [135 Cal. Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]. "The constitutional measure by which we judge the validity of a land use ordinance that is assailed as exceeding municipal authority under the police power dates in California from the landmark decision in Miller v. Board of Public Works (1925) 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479].... [There] we declared that an ordinance restricting land use was valid if it had a `real or substantial relation to the public health, safety, morals or general welfare.' ... [¶] In deciding whether a challenged ordinance reasonably relates to the public welfare, the courts recognize that such ordinances are presumed to be constitutional and come before the court with every intendment in their favor. [Citation omitted.] ... In short, as stated by the Supreme Court in Euclid v. Ambler Co., ... `If the validity ... be fairly debatable, the legislative judgment must be allowed to control.' [272 U.S. 365, 388 (71 L.Ed. 303, 311, 47 S.Ct. 114, 54 A.L.R. 1016).]" (Id. at pp. 604-605, italics added; see also Ensign Bickford Realty Corp. v. City Council, supra, 68 Cal. App.3d 467.)
Cormier concedes that the Associated Home Builders and Ensign Bickford cases established the "fairly debatable" test as the standard for reviewing the validity of a zoning ordinance. He nevertheless argues that where, as here, his fundamental vested right in the use and value of his property is adversely affected, constitutional due process and equal protection should require the trial court to apply the "strict scrutiny" or "substantial evidence" test to the Board's action. Neither of these tests is applicable either to the original action of the Board or to its denial of Cormier's petition for rezoning. (Ensign Bickford Realty Corp. v. City Council, supra, 68 *857 Cal. App.3d 467.) We are bound by existing legal authorities which apply the "fairly debatable" test impartially in determining the validity of the zoning activities of a legislative body.
Courts are traditionally reluctant to interfere with the activities of the legislative body which has rendered a decision with respect to the zoning and classification of real property. "Denial of rezoning will be held valid unless there is no reasonable relation to the public welfare; and, before the courts will interfere with a zoning ordinance, the plan must be arbitrary. (Lockard v. City of Los Angeles, supra, [1949] 33 Cal.2d 453, 461 [202 P.2d 38, 7 A.L.R.2d 990].) The sole issue on review of a zoning ordinance is whether or not there is any reasonable basis to support the legislative determination of the governing body, and the appellate court is not bound by the findings of the trial court if the record shows the question is debatable. (Ensign Bickford Realty Corp. v. City Council, supra, 68 Cal. App.3d 467.)" (Toso v. City of Santa Barbara (1980) 101 Cal. App.3d 934, 943 [162 Cal. Rptr. 210], cert. den., 449 U.S. 901 [66 L.Ed.2d 131, 101 S.Ct. 271].)
Cormier further argues that the action of the Board was arbitrary and capricious because the proposed rezoning classification was selected "without consideration of the various zoning alternatives or the best utilization of the property and only because [a rural-residential] zoning classification constituted the fullest possible down zoning." (Arnel Development Co. v. City of Costa Mesa (1981) 126 Cal. App.3d 330, 335 [178 Cal. Rptr. 723].) He asserts that there is nothing in the record to show that the Board or the Department staff considered alternative zoning or that rural-residential zoning was the appropriate choice.
The evidence before the court shows, however, that the change of designation and the down zoning of Cormier's property was part of an ongoing and comprehensive amendment of the County's General Plan. The Commission and the Board carefully considered, discussed and reviewed the issues involved in allowing commercial development of real property adjacent to the freeway interchange where Cormier's property is located. The Board had the advice of its planning Department staff, and it accepted statements from members of the general public. In addition to the original recommendation made by NAG, the Board received and considered the changed recommendation from NAG before it determined that commercial development of the property would not be advisable.
The Commission used the report of the Department staff in adopting a recommendation which it transmitted to the Board and upon which the *858 Board acted. That report listed five negative consequences of commercial zoning for Cormier's property as follows:
1. Commercial uses would introduce urban development into a rural area.
2. There are highway-oriented commercial uses and areas for future development of commercial uses in Nipomo and Arroyo Grande.
3. The area lacks urban service.
4. Nipomo Advisory Group has recommended against establishment of commercial uses at this interchange.
5. The properties in the northwest and northeast quadrants do not have good freeway visibility.
The trial court found that number 4 was untrue and number 5 was of debatable relevance. The first three negative factors it found "were subject to interpretation and debate."
(3) Cormier contends that the Board's action was discriminatory because it removed commercial zoning from his property in order to limit commercial uses to property in Nipomo and Arroyo Grande. For example, during the revision of the County General Plan the Board changed the zoning on Nipomo property owned by two NAG members from residential to commercial. Cormier argues that the Board's action was constitutionally invalid because it restricted competition for the benefit of these adjacent communities. "It is not the proper function of a zoning ordinance to restrict competition or to protect an enterprise which may have been encouraged by a prior zoning classification." (Ensign Bickford Realty Corp. v. City Council, supra, 68 Cal. App.3d 467, 475-476.)
The trial court noted, however, that Cormier did not argue that the specific purpose for the adoption of the land use element was the defeat of his intended development. It further found that there was no evidence of any improper motive on the part of the Board in adopting the land use element/land use ordinance. The sole adverse inferences which might be drawn from the evidence were stated by the trial court as follows: "A reasonable inference could be drawn that the County planning officials disapproved of the commercial zoning of petitioner's property and of his proposed project. It can further be inferred that members of the Planning Department Staff purposely interfered with petitioner's efforts to get reconsideration of the tentative downzoning decision." Since the motives of the local officials in passing on a zoning ordinance are irrelevant to any inquiry concerning its reasonableness *859 (Toso v. City of Santa Barbara, supra, 101 Cal. App.3d 934, 945), the trial court found that the Board did not act arbitrarily.
The trial court took cognizance of the restricted scope of its authority on review of cases relating to zoning changes. The court is required to determine "... that a land use restriction lies within the public power if it has a `reasonable relation to the public welfare.' [Citations omitted.]" (Associated Home Builders etc., Inc. v. City of Livermore, supra, 18 Cal.3d 582, 604.) Therefore, adhering to the appropriate standard of review, the court found that the validity of the Board's enactment was "fairly debatable," hence it was constitutional, and both the writ and declaratory relief were properly denied.
The judgment is affirmed.
Stone, P.J., and Abbe, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied January 30, 1985. Bird, C.J., was of the opinion that the petition should be granted.