Filed 8/26/25  Parkford Owners For A Better Community v. Windeshausen CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| PARKFORD OWNERS FOR A BETTER COMMUNITY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JENINE WINDESHAUSEN, as County Treasurer/Tax Collector, et al., <br><br> Defendants and Respondents; <br><br> SILVERSWORD PROPERTIES, LLC, et al., <br><br> Real Parties in Interest and Respondents. | C101054 <br><br> (Super. Ct. No. SCV0041548) |

This is the third appeal arising out of a dispute over the operation of a commercial mini-storage facility (Treelake Storage) within a planned unit development in Granite Bay (Treelake Village).  The plaintiff, Parkford Owners for a Better Community (Parkford), appeals from a judgment entered in favor of defendants, Jenine Windeshausen, in her official capacity as Placer County Treasurer-Tax Collector and the

1

County of Placer (collectively, the County), and real parties in interest Silversword Properties, LLC (Silversword) and K.H. Moss Company and Moss Equity (collectively, Moss) (collectively, real parties in interest). Silversword owns the property upon which Moss operates Treelake Storage.

In a separate lawsuit filed in 2017, Parkford challenged the issuance of a building permit for the construction of an expansion of Treelake Storage under the California Environmental Quality Act (CEQA) (Pub. Resources Code., § 21000 et seq.) and the Planning and Zoning Law (Gov. Code, § 65000 et seq.). Parkford appealed from a trial court judgment in favor of the County, Silversword, and Moss, and a different panel of this court dismissed the appeal on the basis that the completion of the challenged expansion prior to entry of judgment rendered Parkford's challenge moot. (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714 (*Parkford I*).

Soon after appealing the judgment that led to this court's decision in *Parkford I*, Parkford filed the present lawsuit, which challenged the County's issuance of a business license for the operation of Treelake Storage. The trial court initially concluded that Parkford's lawsuit was barred by the doctrine of res judicata. (*Parkford Owners for a Better Community v. Windeshausen* (2022) 81 Cal.App.5th 216 (*Parkford II*).) A panel of this court reversed the judgment on appeal, concluding that *Parkford I* was not a final judgment " 'on the merits,' " and therefore the doctrine of res judicata did not apply. (*Parkford II*, at p. 220.)

On remand, the trial court concluded that Treelake Storage was an allowable use under the applicable conditional use permit, the allowable use was a vested right and ran with the land, Treelake Storage was neither a public nuisance nor a menace to public health and safety, and the County properly issued and subsequently renewed the business license for Treelake Storage.

Parkford appeals. It contends mini-storage was not an allowable use under the applicable zoning ordinance, and therefore the County's issuance of a business license violated the Placer County Code. Disagreeing, we affirm.

## FACTS AND PROCEEDINGS

*Treelake Village*

Moss has owned and operated Treelake Storage, a mini-storage facility, since 1998. The storage facility is located within Unit 10 of the Treelake Village planned unit development (PUD) in Granite Bay, which was approved by the County Board of Supervisors in 1987. As originally approved, Treelake Village was expected to consist of more than 1,000 residential units with various amenities, including lakes and waterways, and storage for boats and recreational vehicles (RVs) owned by residents of the community. (*Parkford I*, *supra*, 54 Cal.App.5th at p. 717.) The latter amenity, which would become Treelake Storage, was to be located in Unit 10 within Treelake Village. (*Ibid.*) Unit 10 is in a portion of Treelake Village that is burdened by high-voltage power line easements and is therefore unsuitable for residential development. At the time of its approval, Treelake Village was rezoned to be a "Residential-Agricultural" (RS-AG) combining district under the operative zoning ordinance (1987 Ordinance).[1]

*Treelake Village Conditional Use Permit*

At the time the County Board of Supervisors approved Treelake Village, it also issued a conditional use permit (CUP) for Treelake Village (CUP-1006). Condition 7 of CUP-1006 applied to Unit 10 and originally provided in relevant part: "The following uses are among those permitted within and adjacent to the high-voltage power line easements crossing the project property. Developer shall select from his list such facilities as in his judgment best serve the project and shall provide a schedule for the

---

[1] We will discuss the provisions of the 1987 Ordinance in greater detail in the Discussion, *post*.

3

review and approval by [the County's development review committee (DRC) ] . . . [¶] . . . [¶] (G) [RV] and boat storage for project residents only." Condition 7 did not expressly list mini-storage as an acceptable land use.

*Application for Mini-storage Yard*

On December 6, 1989, Moss submitted to the DRC for its review and approval a development plan for a proposed "R.V., boat and mini-storage yard" within Unit 10. The map of the development plan described the proposed mini-storage facility as providing storage units with sizes ranging from five feet by 10 feet to 20 feet by 30 feet, RV and vehicle storage, an RV dump station, and an office. The map also provided for a separate RV storage facility.

In January 1990, the DRC conceptually approved mini-storage as an appropriate use under condition 7. (*Parkford I*, *supra*, 54 Cal.App.5th at p. 718.) On November 12, 1992, the County Planning Department notified Moss that the DRC required "information in addition to that conceptually approved by the DRC" in January 1990 before it could issue final approval under condition 7. The County Planning Department's letter clarified that the proposed "mini-storage and [RV] storage uses [were] approved as an accessory use to the [PUD] approvals and must be restricted to Treelake residents only." The letter also stated that "[a]ny changes to the approved uses subsequent to the DRC approval, must be submitted to and approved by the DRC." Moss provided the requested additional information on November 4, 1993, proposing to limit "Mini and R.V. Storage" to Treelake Village residents only. In response, in a letter dated November 18, 1993, the County Planning Department notified Moss that the development plan that had been conceptually approved in January 1990, combined with the additional information provided on November 4, 1993, "satisfies Condition #7 of CUP-1006." (See *Parkford I, supra*, 54 Cal.App.5th at p. 718.) The County Planning Department added that, prior to any "future development within Unit 10," Moss must submit a detailed site plan for DRC review and approval, evidence of approval of a site plan by all powerline easement

4

holders, and approval of any proposed changes to the approved uses by the DRC. Additionally, a new environmental application must be processed for any future proposed tentative maps for Unit 10.[2]

Sometime thereafter, condition 7 of CUP-1006 was renumbered and became condition 8. (*Parkford I*, *supra*, 54 Cal.App.5th at p. 718.)

*Condition 8 Modified to Remove Residency Requirement*

On November 7, 1995, Moss submitted an initial environmental impact assessment questionnaire, identifying a proposed "storage facility . . . to provide vehicle and other storage opportunities to Granite Bay residents (as opposed to only Treelake Village residents)." Moss described "[t]he project as presently proposed" as "a refinement of existing approvals of most of Unit 10." Moss specified, "The storage facility will begin with 27 enclosed 12 [feet] [by] 30 [feet] spaces and approximately 30 open parking spaces."

The County Environmental Review Committee requested additional information. As relevant here, the committee observed that condition 8 of CUP-1006 allowed RV and boat storage for Treelake Village residents only, and the project description did not include that clarifying statement. It directed Moss to provide an alternative plan that "complies with the residential component of [CUP-1006]." Moss failed to submit the requested information, and the application was deemed withdrawn due to unreasonable delay.

In April 1996, Moss requested a modification to condition 8 "to eliminate the restriction that the storage facilities (Treelake Unit 10) be utilized by Treelake Village residents only and to allow these facilities to be available to the general public." The DRC recommended approval of the requested modification, concluding that the

---

[2] A final environmental impact report had been prepared in June 1987. (*Parkford I*, *supra*, 54 Cal.App.5th at p. 717.)

5

modification was consistent with the applicable provisions of the zoning ordinance, and the proposed use was consistent with the policies and requirements of the Placer County and Granite Bay general plans. Attached to the recommendation was a traffic study concluding that "the proposed 179 unit self-storage facility" would generate as much traffic as five single-family homes, and the effects of traffic would be the same whether the facilities were available to the public or only to Treelake Village residents. (See *Parkford I*, *supra*, 54 Cal.App.5th at p. 718.) The following month, the County Planning Commission modified condition 8 to remove the residency requirement from condition 8(G). (*Ibid.*)

*Storage Facility Building Permits Approved*

In February 1997, the DRC approved the design for Moss's proposed storage facility. (*Parkford I*, *supra*, 54 Cal.App.5th at p. 718.) The County Building Department issued building permits for four self-storage buildings that August. (*Ibid.*) In June 1998, the County issued a building permit for an office and manager's residence. Each permit was reviewed and approved by the County Planning Department based on CUP-1006.

Final subdivision maps for the entire Treelake Village PUD were recorded by July 1999, as required by the development plan and before it expired in 2002. (See *Parkford I*, *supra*, 54 Cal.App.5th at p. 717.) After construction of Treelake Storage was completed, the building department issued a certificate of occupancy in November 1999. (*Id.* at p. 718.)

*Subsequent Expansions of Treelake Storage*

In April 2001, August 2004, and August 2016, the DRC approved three expansions of the storage facility within Unit 10, citing CUP-1006. (*Parkford I*, *supra*, 54 Cal.App.5th at p. 718.) The County Building Department issued building permits for each expansion, and the County Planning Department approved each building permit. After construction of the 2016 expansion was completed, a certificate of occupancy was issued in October 2017. (*Ibid*.)

6

*Treelake Self Storage's Business License*

In September 1998, the County issued business license number 83982 to Treelake Storage (license No. 83982). License No. 83982 was reviewed and approved by the County Planning Department before being issued by the treasurer-tax collector. From 1998 to 2017, the County renewed license No. 83982 annually.

In August 2017, the County renewed license No. 83982 through September 1, 2018. Less than a month after that renewal, Moss applied to add the 2016 expansion (which is across the street at a different address, but still in Unit 10) to the license for the existing facility. At that time, due to a clerical error, the County incorrectly cancelled license No. 83982 and wrongly noted that the license was closed "per owner request" in its business license system. The County corrected its errors in February 2018 and clarified that license No. 83982 for the existing facility remained in good standing.

On March 9, 2018, the County Planning Department issued the final approval required to add the expansion to the business license for the existing facility. At that time, the County issued business license number 112292 (license No. 112292), covering the existing facility and the new expansion, to replace license No. 83982. License No. 112292 was deemed to have been effective September 1, 2017, with an expiration date of September 1, 2018. In August 2018, the County renewed license No. 112292 for another year, through September 1, 2019.[3]

*Procedural History*

In February 2017, Parkford filed a separate lawsuit challenging the County's issuance of the building permit for the 2016 expansion under CEQA and the Planning and Zoning Law (Gov. Code, § 65000 et seq.). (*Parkford I*, *supra*, 54 Cal.App.5th at pp. 718-719.) The trial court concluded that the County did not violate CEQA because the

---

[3] Real parties in interest represent in the respondents' brief that the license has been renewed each year since 2019. They do not provide support for that assertion in the record, but Parkford does not dispute it.

challenged building permit was a ministerial action, and Parkford's Planning and Zoning Law claim was barred by the applicable statute of limitations. (*Parkford I*, at pp. 720, 721.) Parkford appealed, and a panel of this court dismissed the appeal in August 2020 on the basis that the completion of the Treelake Self Storage expansion rendered the challenge moot. (*Id.* at pp. 721-726.)

In July 2018, less than three weeks after judgment was entered against it in *Parkford I*, Parkford filed the present lawsuit, this time challenging the County's issuance of a business license, rather than a building permit, on the grounds that a mini-storage facility was not an allowable use for property zoned " 'Residential-Ag' " under the county code. (*Parkford II*, *supra*, 81 Cal.App.5th at p. 223.) The amended petition for writ of mandate asserted that Treelake Storage was operating without a valid business license because a mini-storage facility was not an allowable use in residentially zoned districts, even by special permit such as a conditional use permit. (*Ibid.*) Parkford sought a writ of mandate directing the County to vacate and set aside the current business license, an order declaring that the issuance of any renewals of the business license would be in violation of the county code, and a permanent injunction prohibiting the County from issuing any further renewals of the business license. (*Ibid.*) The trial court stayed the second lawsuit pending the outcome of the *Parkford I* appeal and lifted the stay in February 2021, after *Parkford I* was decided. (*Ibid.*)

In April 2021, real parties in interest moved for judgment on the pleadings, which was joined by the County. (*Parkford II*, *supra*, 81 Cal.App.5th at p. 223.) Real parties in interest asserted that Parkford's lawsuit was barred by the doctrine of res judicata. (*Ibid.*) The trial court granted the motion, reasoning that the two lawsuits involved the same CUP and storage facility and "stem from the same primary right." (*Id.* at p. 224.) Parkford appealed, and in July 2022 a panel of this court reversed the judgment, concluding that the doctrine of res judicata did not apply because *Parkford I*'s dismissal

on the basis of mootness did not constitute a final judgment on the merits. (*Id.* at pp. 224-231.)

On remand, the trial court denied Parkford's writ petition on the merits, concluding: (1) mini-storage is an allowable use under CUP-1006; (2) the allowable use under CUP-1006 was vested and continued to run with the land; (3) Treelake Storage was neither a public nuisance nor a menace to the public health and safety; and (4) the County properly issued and renewed license No. 112292.

Parkford timely filed notice of appeal. The case was fully briefed in February 2025 and was assigned to the current panel the following month.

## DISCUSSION

Parkford contends reversal is required because the trial court erred in determining that mini-storage was an allowable use under the applicable zoning ordinance, real parties in interest possessed a vested right to operate a mini-storage facility, and the County properly issued and renewed license No. 112292. As we will explain, we disagree. We conclude the County Planning Department determined that mini-storage was an accessory use to those allowed in residential-agricultural zoned districts and that mini-storage was similar in nature to RV and boat storage (which were expressly allowed uses under CUP-1006); therefore, mini-storage was an allowable use under the applicable zoning ordinance. Additionally, real parties in interest have a vested right to operate a mini-storage facility following the recordation of the final subdivision maps in 1999. Because mini-storage was an allowable use that was vested and ran with the land, the County properly issued a business license to Treelake Storage.

### I

### *Standard of Review*

"Code of Civil Procedure section 1085, providing for [traditional] writs of mandate, is available to compel public agencies to perform acts required by law. [Citation.] To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and

9

adequate' alternative remedy exists [citation]; (2) 'a clear, present, . . . ministerial duty on the part of the respondent'; and (3) a correlative 'clear, present, and beneficial right in the petitioner to the performance of that duty.' " (*People v. Picklesimer* (2010) 48 Cal.4th 330, 339-340; see Code Civ. Proc., § 1085, subd. (a) [a traditional writ of mandate may be issued "to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station"]; *California Assn. of Professional Scientists v. Department of Finance* (2011) 195 Cal.App.4th 1228, 1236 [to obtain writ relief, the petitioner must establish the existence of a public officer's or a public entity's "clear, present, and ministerial duty where the petitioner has a beneficial right to performance of that duty"].) A ministerial duty is an act that a public agency or officer is required to perform in a prescribed manner in obedience to the mandate of legal authority without regard to any personal judgment concerning the propriety of the act. (*Picklesimer*, at p. 340; *Kavanaugh v. West Sonoma County Union High School Dist*. (2003) 29 Cal.4th 911, 916.)

Mandamus may also issue when a public agency has abused its discretion in carrying out a discretionary function. (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 344.) " 'Although traditional mandamus will not lie to compel the exercise of discretion in a particular manner, it is a proper remedy to challenge agency discretionary action as an abuse of discretion.' " (*CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 279.) To show an abuse of discretion, "the moving party must demonstrate the agency's 'action was arbitrary, capricious or entirely without evidentiary support, [and/or that] it failed to conform to procedures required by law.' " (*Manderson-Saleh v. Regents of University of California* (2021) 60 Cal.App.5th 674, 692.)

" '[W]hen an appellate court reviews a trial court's judgment on a petition for a traditional writ of mandate, it applies the substantial evidence test to the trial court's findings of fact and independently reviews the trial court's conclusions on questions of

10

law, which include the interpretation of a statute and its application to undisputed facts.' " (*CV Amalgamated LLC v. City of Chula Vista*, *supra*, 82 Cal.App.5th at p. 280.)  But while we exercise our independent judgment in interpreting municipal ordinances, a county's interpretation of its own ordinance " ' "is entitled to great weight unless it is clearly erroneous or unauthorized." ' "  (*Berkeley Hills Watershed Coalition v. City of Berkeley* (2019) 31 Cal.App.5th 880, 896.)

We also note "a fundamental principle of appellate procedure [is] that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment."  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)

II

*Treelake Storage's Business License*

Parkford's first cause of action for writ of mandate contends the issuance of license No. 112292 violates Placer County Code sections 5.12.030, subdivision (A) and 5.12.040.  The Placer County Code requires a valid business license to operate a business within the unincorporated area of Placer County.  (See *id.*, §§ 5.08.080, subd. (A); 5.12.020)  The county tax collector is charged with issuing business licenses.  (*Id.*, § 5.08.090, subd. (A).)  Prior to the issuance of a business license, the planning, building, environmental health, and facilities departments must recommend approval or denial of the license, which requires a determination that, among others, "the type of business is compatible with zoning regulations at the business location."  (*Id.*, § 5.12.030, subd. (A).)  "No person shall be entitled to a business license or renewal, and the tax collector shall not issue such license or renewal to any person commencing business, unless and until person has complied with all applicable county ordinances or conditions."  (*Id.*, § 5.12.040.)

11

As we set forth *ante*, the County Planning Department recommended approving license No. 83982 to Treelake Storage in September 1998, and the license was issued by the County and renewed annually thereafter. Parkford contends that mini-storage is not an allowable use in residentially-zoned districts, even by conditional use permit, and therefore the County was prohibited from issuing a business license to Treelake Storage under Placer County Code section 5.12.040. We turn first to the issue of whether Treelake Storage was compatible with the applicable zoning regulations at the time the license was issued.

A. *1987 Ordinance*

At the time Treelake Village was approved by the board of supervisors, it was rezoned to be a "Residential-Agricultural" (RS-AG) combining district under the 1987 Ordinance. The 1987 Ordinance encouraged new residential development to proceed as larger scale PUDs, which were defined in part as "[a]n area of land, controlled by a landowner, to be developed as a single entity for a number of dwelling units, the plan for which may not correspond in lot size, bulk or type of dwelling, density, lot coverage and required open space to the regulations established in any one residential district created, from time to time, under the provisions of the County Zoning Ordinance." (1987 Ordinance, § 1002, subd. (e); see *id.*, § 1000 [encouraging development as PUDs].)

The 1987 Ordinance allowed various uses in residential zones, including, for example, single-family dwellings, accessory buildings and uses customarily accessory to existing single family building on the same building site (e.g. garages, sheds, greenhouses, and boat houses), and non-residential uses such as "[p]ublic buildings and quasi-public uses, parks, playgrounds, recreation buildings, structures and uses, [and] fire houses." (1987 Ordinance, § 1606.) An accessory use was defined as "[a] use accessory to any permitted use and customarily a part thereof, which use is clearly incidental and secondary to the permitted use and which does not change the character thereof." (*Id.*, § 1.202.)

12

The 1987 Ordinance provided that allowable uses for parcels within a PUD included: "(a) Any use permitted in the basic zone classification. [¶] (b) Two family dwellings, single family dwellings. [¶] (c) Multiple (three or more) family dwellings, recreation uses. [¶] (d) Buildings and uses accessory to those in subsections (a), (b), and (c) above." (1987 Ordinance, § 1012.)

In addition to those uses expressly permitted, the 1987 Ordinance allowed any uses that the County Planning Commission, Planning Department, or Zoning Administrator determined were "similar in nature" to the expressly permitted uses within each zoning district. (1987 Ordinance, §§ 1606, 1745.) Such similar-in-nature determinations were subject to appeal under section 1401, which provided in part: "Rulings of the Planning Director and his staff pertaining to interpretation of this chapter and enforcement thereof (other than permit appeals following formal hearing) may be appealed to the Planning Commission and then to the Board of Supervisors."

The 1987 Ordinance required conditional use permits for proposed PUDs. (1987 Ordinance, § 1014.) Accordingly, the County Board of Supervisors issued CUP-1006 when it approved Treelake Village. As we set forth *ante*, condition 7 of CUP-1006 provided that "[RV] and boat storage for project residents only" was "among" the uses permitted in Unit 10.

B. *Mini-storage as Similar in Nature to RV and Boat Storage Under CUP-1006*

Parkford contends mini-storage was not an allowable land use in Unit 10 because CUP-1006 did not expressly identify it as an approved use, but rather identified only RV and boat storage. Real parties in interest acknowledge that mini-storage was not expressly listed as an allowable use in Unit 10, but argue that the County approved mini-storage as similar in nature to RV and boat storage under condition 7 in its November 18, 1993, letter. Real parties in interest have the better argument.

13

By way of brief summary, in December 1989 Moss submitted a plan "[p]ursuant to condition #7" of CUP-1006 for land uses within Unit 10, including "an R.V., boat and mini-storage yard." The accompanying development map proposed a mini-storage facility, RV and vehicle storage, an RV dump station, and an office. That proposal was "conceptually" approved on January 16, 1990, subject to DRC approval. On November 12, 1992, the County Planning Department informed Moss that it required additional information before the development plan for Unit 10 could be approved by the DRC. The letter required Moss to "[d]escribe those uses to be restricted to Treelake residents only, and those available to the general public." The letter also noted: "The mini-storage and [RV] storage uses are approved as an accessory use to the [PUD] approvals and must be restricted to Treelake residents only."

In a letter dated November 4, 1993, Moss confirmed that the proposed "Mini and R.V. Storage" facility would be restricted to Treelake Village residents. On November 18, following the submission of that additional information, the County Planning Department concluded in a letter that: "This [additional] information is adequate for satisfying Condition #7 of CUP-1006." The County Planning Department's letter did not specify the basis for its determination that the mini-storage and RV storage facility satisfied condition 7 of CUP-1006.

Parkford raises several arguments as to why the County Planning Department's letter did not constitute a similar-in-nature determination under section 1745 of the 1987 Ordinance. We address these arguments in turn.

First, Parkford argues that mini-storage is not "similar in nature" to RV and boat storage. It asserts that RV and boat storage "differs significantly" from the 1987 Ordinance's definition of "Individual Locker Storage Facility," which was synonymized with mini-storage in a subsequent ordinance. The 1987 Ordinance defined "Individual Locker Storage Facility" as "[a] building not exceeding 15 [feet] in height and of a commercial nature and design consisting of separate storage compartments each no larger

14

than 400 square feet in area and in which household goods, recreational equipment, vehicles, etc., may be stored. Further, such structures shall not be used for the storage of any item of substance in connection with which there is appreciable dust, odor, noise or other nuisance or hazardous factors. Such a use may contain one (1) caretaker dwelling (not a mobile home) as an integral part of the building." (1987 Ordinance, § 1.10195.)

We disagree with Parkford that such a storage facility differs so significantly from "RV and boat storage" that the County Planning Department could not have made the determination that the two uses were similar in nature. Both mini-storage and RV and boat storage are non-residential storage facilities for personal property, including vehicles. Moreover, "Individual Locker Storage Facility" was defined in part by the 1987 Ordinance as a facility for storing recreational equipment and vehicles, which would include RVs and boats. While mini-storage facilities also provide storage opportunities for property other than RVs and boats, Parkford fails to demonstrate that the storage of RVs and boats is so dissimilar from mini-storage that the County Planning Department could not have determined they were similar in nature.

Second, Parkford argues that the County Planning Department's November 18, 1993, letter did not constitute a similar-in-nature determination because the letter identified several additional requirements for any future development within Unit 10. But requirements imposed on *future* development do not take away from the County Planning Department's determination that the proposal, which expressly included a mini-storage facility, satisfied condition 7 of CUP-1006. Indeed, one of the requirements imposed by the County Planning Department for future development was that "[a]ny proposed *changes to the approved uses* within [Unit 10] must first be approved by the DRC." In other words, the County Planning Department had approved mini-storage as an allowable use within Unit 10, and changes to that approved use would require approval by the DRC. The County Planning Department's letter did not impose any conditions on its determination that the information provided satisfied condition 7.

15

Third, Parkford argues that the County Planning Department's November 1993 letter cannot constitute a determination that mini-storage was similar in nature to RV and boat storage because such determinations are subject to appeal under section 1401 of the 1987 Ordinance, and the County Planning Department's letter was not a clear determination that could have been appealed.

As we set forth *ante*, section 1745 of the 1987 Ordinance provides: "Whenever in this chapter it is provided that only certain uses are allowed 'or those uses which in the opinion of the Planning Commission are similar in nature', such a determination may also be made by the Planning Department and by the Zoning Administrator. Such determinations shall be subject to appeal as provided in Section 1401." Section 1401, in turn, provides: "Rulings of the Planning Director and his staff pertaining to interpretation of this chapter and enforcement thereof (other than permit appeals following formal hearing) may be appealed to the Planning Commission and then to the Board of Supervisors."

Parkford argues that because the County Planning Department's November 1993 letter did not use the phrase "similar in nature" or expressly specify that it was making a determination regarding "mini-storage," it could not have informed either the developer or the public that it was making a determination under section 1745, and thus the determination could not have been appealed under section 1401. But Parkford points to no specific requirement that a similar-in-nature determination by the County Planning Department must have been made separately from the determination that the proposed uses satisfied condition 7. Section 1745 provides only that the County Planning Department may determine that a proposed use is similar in nature to an allowed use. Section 1401 provides that rulings pertaining to the interpretation of the 1987 Ordinance may be appealed. Here, the County Planning Department received a proposal that included mini-storage as a proposed use, and it informed Moss in writing that the

16

proposed uses satisfied condition 7.[4] Had any member of the public reviewed the proposal and the County Planning Department's approval thereof, and believed that the proposal did not satisfy condition 7 as the County Planning Department had determined, they could have appealed that decision under section 1401.

Parkford further argues that there is no substantial evidence that the County Planning Department made a similar in nature determination regarding mini-storage. But Parkford fails to explain how the County Planning Department's determination that Moss's proposal satisfied condition 7 could be interpreted in any other way. We presume the County Planning Department regularly performed its duties, including by making the findings and determinations required to support its conclusion, in the absence of evidence to the contrary. (Evid. Code, § 664; *Harrington v. City of Davis* (2017) 16 Cal.App.5th 420, 436 [presuming city properly granted a CUP absent evidence that the city's decision was the result of political pressure]; *Orinda Homeowners Committee v. Board of Supervisors* (1970) 11 Cal.App.3d 768, 775 [presuming agency "ascertained the existence of necessary facts" and applied "the applicable standards" absent "evidence compelling the conclusion that [the board's action was], as a matter of law, unreasonable and invalid"].) The County Planning Department received a proposal from Moss that expressly stated the intent to build a mini-storage facility within Unit 10. The County Planning Department expressly determined that the proposal satisfied condition 7. Because condition 7 did not expressly allow mini-storage, we must presume the County Planning Department determined that mini-storage was similar in nature to RV and boat storage, which were expressly allowed uses within Unit 10.

---

[4] There is nothing to suggest that the County Planning Department failed to notify any member of the public who properly requested notification. (See 1987 Ordinance, § 1405 [appeal may be initiated within seven days from the date of mailing of a decision to the applicant and "all persons who have, in writing, requested that they be mailed copies of such decision if such decision is not rendered at a regularly scheduled public hearing"].)

Parkford also argues that the neither the staff report prepared in advance of the County Planning Commission's May 1996 modification of condition 8 nor the documents submitted in support thereof referenced mini-storage. But as Parkford observes, the issue in that modification was the residency requirement in condition 8(G), not the similar-in-nature determination that occurred three years earlier. The County Planning Department was authorized to make the similar-in-nature determination without approval by the County Planning Commission, and there is nothing to suggest that the planning commission was required to review the County Planning Department's determination at the time it modified condition 8 in May 1996. (See 1987 Ordinance, § 1745.)

C. *Mini-storage as an Accessory Use*

As we set forth *ante*, the 1987 Ordinance provided that allowable uses in PUDs included "[a]ny use permitted in the basic zone classification," single, two-family, or multi-family dwellings, recreation uses, and "[b]uildings and uses accessory" to the other allowable uses. (1987 Ordinance, § 1012, subds. (a)-(d).) Here, the County Board of Supervisors issued CUP-1006, identifying "[RV] and boat storage for project residents only" as an accessory use to those otherwise allowed under the 1987 Ordinance. As we have discussed, here the County Planning Department determined that mini-storage was a use similar in nature to RV and boat storage. (1987 Ordinance, § 1745.)

Nevertheless, Parkford argues that mini-storage did not qualify as an accessory use under sections 1013 and 1018 of the 1987 Ordinance. Section 1013 provided in relevant part that the CUP "may restrict the uses set forth in Section 1012 to one or more of the uses permitted in the basic zone classification." Similarly, section 1018, subdivision (g) provided in relevant part that the subdivision plot dedication, covenants, and other recorded legal agreements related to a PUD must "[r]estrict the use of the property to the uses permitted by the [CUP] if the uses are restricted pursuant to Section 1013."

18

But while section 1013 of the 1987 Ordinance provided that the CUP *may* restrict the uses set forth in section 1012 to one or more of the uses permitted in the underlying zone classification, CUP-1006 did not do so.  Rather, condition 7 of CUP-1006 provided a non-exhaustive list of allowable uses in Unit 10.  Accordingly, section 1018 did not apply to restrict the uses to those permitted by CUP-1006, because CUP-1006 itself did not restrict the uses.  Parkford fails to demonstrate that mini-storage was not an allowable use pursuant to the provisions of sections 1013 and 1018 of the 1987 Ordinance.

An agency's interpretation of its own ordinance "is entitled to great weight unless it is clearly erroneous or unauthorized."  (*Anderson First Coalition v. City of Anderson* (2005) 130 Cal.App.4th 1173, 1193.)  Parkford has not shown there is insufficient evidence the County Planning Department's interpretation that the mini-storage was similar in nature is clearly erroneous or unauthorized.

D.  *Vested Rights to Operate a Mini-storage Facility*

Parkford next argues that real parties in interest have no vested rights to operate a mini-storage facility.  They note the argument, raised in the trial court by real parties in interest, that such vested rights were established under section 20.160, subdivision (B)(1)(d) of a county ordinance adopted in 1995 (1995 Ordinance).[5]  Section 20.160, subdivision (B)(1)(d) provided that a CUP is valid for 24 months from its effective date or other provisions in the chapter, after which it expires unless it is "granted for a planned residential development . . . [and] implemented through the recordation of the final subdivision map pursuant to the approved PD."  Subdivision (B)(2) of section 20.160 provided that once the PUD has been implemented, "the permit that authorized the use

---

[5]  Section 2.6 of the development agreement provided that the County may "apply newer or modified rules, regulations, ordinances, and laws, provided such application does not prevent development of the subject property for the uses and to the density and intensity set forth in the General Plan, Zoning, and the Master Conditional Use Permit in effect on the date of this Agreement."

19

shall remain valid and in force and shall run with the land, including any conditions of approval adopted with the permit . . ." unless certain conditions (not relevant here) occur. (1995 Ordinance, § 20.160, subd. (B)(2).) As we set forth *ante*, the final subdivision map for Treelake Village was recorded in 1999 (see *Parkford I*, *supra*, 54 Cal.App.5th at p. 717), and therefore the PUD was implemented and the conditions in CUP-1006 ran with the land. (See *Stewart Enterprises, Inc. v. City of Oakland* (2016) 248 Cal.App.4th 410, 418 [vested rights may be created by local ordinance].)

Parkford's sole argument in rebuttal to real parties in interest's is that nothing in CUP-1006 authorizes mini-storage, and therefore real parties in interest have no vested right to operate a mini-storage facility. Real parties in interest correctly observe that Parkford does not dispute that real parties in interest had a vested right in the uses allowed under condition 8, only that condition 8 did not authorize mini-storage. As we have discussed, the County Planning Department determined that mini-storage was similar in nature to RV and boat storage, and therefore mini-storage was an approved use that ran with the land. (See *IT Corp. v. Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 89 [conditionally permitted uses in a CUP "become part of the zoning regulation applicable to the affected parcel"].)

For the first time in its reply brief, Parkford argues that CUP-1006 was not fully implemented (and therefore its conditions did not run with the land), because the final subdivision maps recorded in 1999 did not identify any use for portions of Unit 10 upon which the facility expanded in 2001, 2004, and 2016, well after the maps were recorded. It also argues for the first time in reply that the development agreement required that all construction be completed by 2002, and therefore any subsequent application for construction of a mini-storage facility would require a new evaluation and conformance with the current zoning regulations.

20

Because Parkford raises these arguments for the first time in its reply brief, we do not consider them.  (See *High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 111, fn. 2.)  " ' " 'Obvious considerations of fairness in argument demand that the appellant present all of his [or her] points in the opening brief.  To withhold a point until the closing brief would deprive the respondent of his [or her] opportunity to answer it or require the effort and delay of an additional brief by permission.  Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " ' " (*Ibid.*)  In any event, Parkford forfeited this argument by failing to raise it in the trial court.  (*City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 28 ["As a general rule, theories not raised in the trial court cannot be raised for the first time on appeal"].)

E.  *Business License*

Parkford's petition for writ of mandate hinged on the argument that the issuance of a business license to Treelake Storage was improper because the mini-storage facility is noncompliant with the applicable zoning regulations.  However, as we have discussed, the County Planning Department determined that mini-storage was an allowable use in Unit 10, and real parties in interest have a vested right in that use.  Accordingly, the County's issuance and annual renewals of license No. 112292 was proper and complied with the applicable zoning regulations.[6]

---

[6] Based on our conclusion, we need not and do not reach Parkford's argument that denial of a business license would not interfere with a fundamental vested right of real parties in interest to continue operating Treelake Storage.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.
(Cal. Rules of Court, rule 8.278(a).)


/S/

_____

Duarte, Acting P. J.


We concur:


/S/

_____

Feinberg, J.


/S/

_____

Wiseman, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.